This Opinion is a
Precedent of the TTAB

Mailed: June 23, 2026

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

Trademark Trial and Appeal Board

_____

*In re TextNow Inc.*

_____

Serial No. 98231457

_____

Matthew D. Kendall of Gardner, Linn, Burkhart & Ondersma LLP,
    for TextNow Inc.

Faith Beaudry-Torres, Trademark Examining Attorney, Law Office 126,
    Jeffrey Look, Managing Attorney.

_____

Before Greenbaum, Stanley, and Bradley,
    Administrative Trademark Judges.

Opinion by Bradley, Administrative Trademark Judge:

TextNow Inc. ("Applicant") applied to register the standard-character mark

TOUCH MOBILE (MOBILE disclaimed) on the Principal Register for inter alia:

> Telecommunications and communications equipment,
> apparatus and systems for recording, transmission,
> reception, processing, retrieval, reproduction,
> manipulation, analysis, display and print out of sound,
> images or data, namely, mobile radios, cellular telephones,
> digital cellular telephones, mobile telephones, mobile data
> receivers and transmitters; encoded smart cards, namely,
> prepaid smart cards containing programming used for
> mobile telephones and Internet access, and prepaid

telephone calling cards, magnetically encoded; accessories for cellular telephones and all other communications devices, namely, protective covers for mobile phones, microphones and speakers, phone cradles, and telephone holsters and downloadable pre-recorded ringtones; interactive video game software in International Class 9;

and

Telecommunication services, namely, providing voice, data, pictures, music and video via wireless networks, electronic transmission of voice, text, images data and information by means of mobile radios, cellular telephones, digital cellular telephones and mobile telephones; mobile telephone communication services; wireless Internet access services; and wireless data services for mobile devices via a wireless network for the purpose of sending and receiving electronic mail, data, images, information, text, numeric messaging and text messaging and for accessing a global communications network in International Class 38.[1]

The Examining Attorney issued a partial refusal of registration as to Classes 9 and 38 on two grounds. First, Applicant's mark TOUCH MOBILE, as applied to the goods in Class 9 and the services in Class 38, is likely to cause confusion under Section 2(d) of the Trademark Act, 15 U.S.C. § 1052(d), with the following five marks on the Principal Register:[2]

- MOBILE TOUCH in standard characters (with MOBILE disclaimed) for "Text and numeric wireless digital messaging services; Broadcast

---

[1] Application Serial No. 98231457 was filed on October 19, 2023, under Sections 1(b) and 44(e) of the Trademark Act, 15 U.S.C. §§ 1051(b), 1126(e), based on Canadian Registration No. TMA965015, which issued on March 7, 2017. The application also identifies goods in Class 16 and services in Classes 41 and 42, which are not involved in this appeal.

[2] One entity owns the first mark and a separate entity owns the remaining four marks.

communication services, namely, transmitting text messages to designated recipients for others" in Class 38;[3]

- TOUCH TEL MOBILE in standard characters (with MOBILE disclaimed) for "Two-way radios; dispatch radios; GPS tracking devices and GPS navigation devices" in International Class 9 and "Telecommunications services, namely, radio communication and radio paging services" in Class 38;[4]

- TOUCH TEL, typeset (with TEL disclaimed) for "Telecommunication devices, namely, pagers, mobile radios and marine telephones" in Class 9 and "Telecommunication services, namely, paging, mobile radio and marine telephone services" in Class 38;[5]

- TOUCH TEL PAGING, typeset (with PAGING disclaimed) for "Pagers for use in paging systems" in Class 9 and "Paging services in connection with paging systems" in Class 38;[6] and

---

[3] Registration No. 4224659, registered on October 16, 2012, and has been renewed. The registration is owned by Dealer Product Services, Inc. ("Registrant"). June 30, 2024 Office Action at 18.

Page references to the application file cite to the online database of the USPTO's Trademark Status & Document Retrieval ("TSDR") system. All citations to documents contained in the TSDR database are to the downloaded .pdf versions of the documents.

[4] Registration No. 4345309, registered on June 4, 2013, and has been renewed. The registration also covers services in Classes 35 and 39, but the Examining Attorney did not cite these classes as a basis for the refusal to register Applicant's mark. *See* June 30, 2024 Nonfinal Office Action at 2-3; November 26, 2024 Final Office Action at 3; Examining Attorney's Brief, 9 TTABVUE 2. This registration and cited Registration Nos. 2670762, 1686092, and 2590233 are owned by Touch Tel Corporation. June 30, 2024 Nonfinal Office Action at 10-16.

Citations in this opinion to the briefs and other materials in the appeal docket refer to TTABVUE, the Board's online docketing system.

[5] Registration No. 2670762, registered on January 7, 2003, and has been renewed. A typed or typeset mark is the legal equivalent of a standard-character mark. *See In re Viterra Inc.*, 671 F.3d 1358, 1363 n.2 (Fed. Cir. 2012) ("until 2003, 'standard character' marks formerly were known as 'typed' marks.").

[6] Registration No. 1686092, registered on May 12, 1992, and has been renewed.

- **Touch Tel▦Paging** (with PAGING disclaimed) for "Pagers for use in paging systems" in Class 9 and "Paging services in connection with paging systems" in Class 38.[7]

Second, Applicant's identification of goods in Class 9 and services in Class 38 is indefinite.

After the Examining Attorney issued the final refusal, Applicant appealed and requested reconsideration.[8] The Examining Attorney denied the request for reconsideration,[9] and the appeal resumed. The appeal is fully briefed.[10] We affirm the partial refusal to register on both grounds.

## I.    Likelihood of Confusion

Trademark Act Section 2(d), in relevant part, prohibits registration of a mark that "so resembles a mark registered in the Patent and Trademark Office . . . as to be likely, when used on or in connection with the goods of the applicant, to cause confusion." 15 U.S.C. § 1052(d). Our determination under Section 2(d) of the Trademark Act involves an analysis of all of the probative evidence of record that is

---

[7] Registration No. 2590233, registered on July 9, 2002, and has been renewed. There is no description of the mark, but the TSDR record lists the following design search code: 16.01.08 - Cellular phones; Mobile phones; Telephones; Walkie-talkies.

[8] 1 TTABVUE; April 1, 2025 Request for Reconsideration.

[9] 6 TTABVUE. The final refusal based on the indefiniteness of the identifications of goods and services was issued as to all classes in the application. Applicant's amendments set forth in its request for reconsideration resolved the refusal based on the identification of goods and services in Classes 16, 41 and 42, but did not address the refusal as to Classes 9 and 38. *Id.* at 1-2.

[10] 4 TTABVUE (Applicant's brief); 9 TTABVUE (Examining Attorney's brief); 10 TTABVUE (Applicant's reply brief). Applicant filed its main brief on the same day that it filed its notice of appeal and request for reconsideration. Although the Board's institution order permits this timing (*see* 2 TTABVUE), the better practice is for applicants to file the main appeal brief after the Examining Attorney has acted on a pending request for reconsideration. In any event, Applicant was not prejudiced by filing its appeal brief in this sequence.

relevant to the factors bearing on a likelihood of confusion. *See In re E.I. DuPont DeNemours & Co.,* 476 F.2d 1357, 1361 (CCPA 1973) ("*DuPont*"); *see also Palm Bay Imps., Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772*, 396 F.3d 1369, 1371 (Fed. Cir. 2005).

We must consider "each *DuPont* factor for which there is evidence and argument." *Spireon, Inc. v. Flex Ltd.*, 71 F.4th 1355, 1362 (Fed. Cir. 2023) (citation omitted). In any likelihood of confusion analysis, two key considerations are the similarities between the marks and the similarities between the goods and services. *See In re i.am.symbolic, llc*, 866 F.3d 1315, 1322 (Fed. Cir. 2017) ("likelihood of confusion analysis considers all *DuPont* factors for which there is record evidence but 'may focus … on dispositive factors, such as similarity of the marks and relatedness of the goods'") (alteration in the original) (quoting *Herbko Int'l, Inc. v. Kappa Books, Inc.*, 308 F.3d 1156, 1164-65 (Fed. Cir. 2002)). These and other factors are discussed below.

We focus our likelihood of confusion analysis on Registration No. 4224659 for the mark MOBILE TOUCH ("Cited Registration"), the cited mark that is most similar to Applicant's mark TOUCH MOBILE. Because we find confusion likely based on the mark and services in this registration, we need not consider the likelihood of confusion between Applicant's mark and the marks in the other cited registrations. *See In re I-Coat Co., LLC*, No. 86802467, 2018 TTAB LEXIS 171, at *11-12 (TTAB 2018) (considering one of the cited registrations because "[i]f likelihood of confusion is found as to the mark and goods in this registration, it is unnecessary to consider the other cited registration").

## A. Applicant's Cancelled Registration No. 5308993 ("Prior Registration")

Applicant focuses the majority of its briefing on its argument that it owned the Prior Registration covering the mark TOUCH MOBILE for, inter alia, goods in Class 9 and services in Class 38 that are identical to those listed above for the subject application.[11] The Prior Registration issued on October 17, 2017 under Section 44(e) of the Trademark Act, 15 U.S.C. § 1126(e), based on Canadian Registration No. TMA965015.[12] The Prior Registration was cancelled by operation of law as of the end of the sixth anniversary of the registration date, October 17, 2023, for failure to file a Declaration of Use and/or Excusable Nonuse Under Section 8 of the Act, 15 U.S.C. § 1058, ("Section 8 Declaration") within the statutory filing period (including the grace period). On May 3, 2024, the United States Patent and Trademark Office ("USPTO") updated its records to indicate that the registration was cancelled.[13]

Applicant contends that ownership of its "now-cancelled [Prior Registration], which remained in force at the time [Applicant's] above-identified application was

---

[11] 4 TTABVUE 2, 8-14; 10 TTABVUE 2-6. *See also* September 30, 2024 Response to Office Action at 9-10.

[12] September 30, 2024 Response to Office Action at 9-10.

[13] *Id.* at 9, 11. Registrations remain in force for ten years, except that a registration shall be cancelled unless the owner files a Section 8 Declaration "within the 1-year period immediately preceding the expiration of 6 years following the date of registration under this Act" or within a six-month grace period from the sixth anniversary of the registration date. 15 U.S.C. § 1058(a). The grace period, however, does not have a bearing on the cancellation date of the registration if no Section 8 Declaration is filed within the grace period. *Taylor v. Motor Trend Group, LLC*, No. 92081731, 2023 TTAB LEXIS 332, at *2 (TTAB 2023). Nor does the date that the USPTO undertakes the ministerial act of updating the registration record to indicate the registration is cancelled. *Id.* at *5-6; *see also Land O'Lakes v. Hugunin*, No. 91182399, 2008 TTAB LEXIS 47, at *5-6 (TTAB 2008) (explaining that the cancellation date "is not dependent on the date the Office undertook the ministerial function of entering the cancellation into the USPTO database").

filed, is relevant to the registrability of its identical mark of U.S. trademark application, Ser. No. 98231457 for identical goods and services."[14] Specifically, Applicant urges that:

> the principle of *res judicat*a and the holdings of *In re Strategic Partners, Inc.* support a conclusion that there is no likelihood of confusion under Section 2(d) for TOUCH MOBILE going forward, just as the identical TOUCH MOBILE mark for the identical goods and services was registered by the identical party for a recent prior period of 6-1/2 years, during which time no additional third party applications were filed and no additional third party registrations issued that would affect registrability.[15]

Accordingly, we begin our analysis by considering Applicant's arguments regarding its cancelled Prior Registration under the thirteenth *DuPont* factor, which examines "any other established fact probative of the effect of use." *DuPont*, 476 F.2d at 1361.

### 1. Application of *Strategic Partners*

As noted, Applicant relies on *In re Strategic Partners, Inc.*, No. 77903451, 2012 TTAB LEXIS 80, at *6-10 (TTAB 2012) ("*Strategic Partners*") to argue that ownership of its now-cancelled Prior Registration covering the identical mark TOUCH MOBILE for identical goods and services weighs against a likelihood of confusion in this case.[16] *Strategic Partners* presented the "unique situation" of the applicant's ownership of a prior registration for a substantially similar mark and identical goods that co-existed

---

[14] 4 TTABVUE 2 (cleaned up). We modified Applicant's citation of the application serial number to remove slashes and commas because the Board no longer uses that format and instead cites trademark application serial numbers without the use of any punctuation. The Board similarly does not use any punctuation in its citation of trademark registration numbers.

[15] *Id.* at 14.

[16] *Id.* at 8-14; 10 TTABVUE 2-5.

on the Register with the cited mark for over five years. *Id.* at 8-9. There, the Board found that these facts when considered in conjunction with the facts that "[a]t this stage, applicant's **existing registration** is **over five years old**, and thus is **not subject to attack by the owner of the cited registration on a claim of priority and likelihood of confusion** . . . tip the scale in favor of applicant and a finding of no likelihood of confusion." *Id.* at 8 (emphasis added).

Here, as noted above, Applicant's Prior Registration issued on October 17, 2017 under Section 44(e) and was cancelled for failure to file the required Section 8 Declaration.[17] Applicant missed its deadline to file the Section 8 Declaration of October 17, 2023, as well as the six-month grace period deadline of April 17, 2024.[18] *See* 15 U.S.C. § 1058(a)(1), (a)(3). Applicant does not explain why it failed to file the required Section 8 Declaration for its now-cancelled Prior Registration.

Applicant argues that the facts of its present application are "more favorable" than those in *Strategic Partners*, and accordingly support its position that there is no likelihood of confusion with the Cited Registration.[19] We disagree for several reasons.

First, while Applicant contends that there is no requirement that its Prior Registration "remain in force during the entire pendency of the application,"[20] in *Strategic Partners* the Board specifically relied on the facts that the prior registration

---

[17] September 30, 2024 Response to Office Action at 9-10.

[18] *Id.* ("Registration cancelled because registrant did not file an acceptable declaration under Section 8.").

[19] 4 TTABVUE 11, 14.

[20] *Id.* at 9.

was in effect at the time of the appeal, had been registered for over five years, and was not subject to attack on the basis of priority and likelihood of confusion, in determining that confusion was not likely. 2012 TTAB LEXIS 80, at *8. As of the time the USPTO examined Applicant's current application, none of those facts existed here. *See In re USA Warriors Ice Hockey Program, Inc.*, No. 86489116, 2017 TTAB LEXIS 143, at *10 (TTAB 2017) ("a key factual distinction from *Strategic Partners*" was that the applicant's existing prior registration was "still subject to a cancellation action by [r]egistrant based on likelihood of confusion"). Applicant's cancelled Prior Registration does not "justify registration of its current application . . . [because] cancellation destroys the Section 7(b) presumptions and makes the question of registrability 'a new ball game' which must be predicated on current thought." *In re Ginc UK Ltd.*, No. 78618843, 2007 TTAB LEXIS 83, at *24 (TTAB 2007) (citation and quotation omitted).

Second, Applicant makes much of the timing of the cancellation of its Prior Registration, arguing that:

> the Examining Attorney would presumably have determined that the mark TOUCH MOBILE is registrable if the Examining Attorney had had a shorter backlog of applications to review and had therefore considered [Applicant's] application just five (5) months after its filing date rather than about 7-1/2 months after its filing date [i.e., before Applicant's Prior Registration was cancelled].[21]

Applicant also asserts that its "[Prior] [R]egistration remained in force for another six and one-half (6-1/2) months while the present application was pending and

---

[21] 4 TTABVUE 11; 10 TTABVUE 4-5.

awaiting its first action",[22] but Applicant also "recognizes . . . trademark rights are not static."[23] Accordingly, "the right to register must be determined on the basis of the factual situation as of the time when registration is being sought." *In re Chippendales USA, Inc.*, 622 F.3d 1346, 1354 (Fed. Cir. 2010) (citation omitted).[24]

Here, the record demonstrates that when the Examining Attorney reviewed Applicant's current application to determine eligibility of its mark for registration, Applicant's Prior Registration was cancelled due to its failure to file the required affidavit or declaration of use.[25] Moreover, when Applicant filed its current

---

[22] 4 TTABVUE 10. While the Prior Registration technically remained in force while the grace period to file a Section 8 declaration was pending, as explained *supra* at n. 13, because no Section 8 Declaration was filed, the effective cancellation date for Applicant's Prior Registration was October 17, 2023. *See Taylor*, 2023 TTAB LEXIS 332, at *2 ("a registration expires by operation of law as of the last day of its . . . term, and no rights in the registration exist after that date"). Accordingly, there actually was no overlap between Applicant's Prior Registration and the filing of the current application on October 19, 2023.

[23] 4 TTABVUE 14.

[24] Applicant asserts that this principle is "irrelevant to the case at hand" and applies only in certain circumstances such as "where an applicant may have acquired distinctiveness of a mark while the relevant application was pending." 4 TTABVUE 12, 3-4. However, the USPTO determines the right to register based on facts and evidence at the time registration is sought for all trademarks and does not limit this principle to any particular type of trademark or circumstance. *See In re Thunderbird Prods. Corp.*, 406 F.2d 1389, 1392 (CCPA 1969) (holding that "the time when the issue of registrability is under consideration extends at least to the time the application is acted on in the Patent Office" and includes Board proceedings); *In re MK Diamond Prods., Inc.*, No. 86813875, 2020 TTAB LEXIS 263, at *7 (TTAB 2020) (agreeing with the examining attorney that "trademark rights are not static" and that "[a]pplicant's ownership of a mark on the Supplemental Register does not entitle Applicant to an automatic registration of its proposed mark in the present application"); *Fortunoff Silver Sales, Inc. v. Norman Press, Inc.*, No. 91064943, 1985 TTAB LEXIS 101, at *19 (TTAB 1985) ("The likelihood of confusion must be decided on the basis of facts as they exist at the time when the issue is under consideration.") (citing *R. J. Reynolds Tobacco Co. v. Am. Brands, Inc.*, 493 F.2d 1235, 1238 (CCPA 1974)). *See also* TRADEMARK MANUAL OF EXAMINING PROCEDURE (TMEP) § 1216.01 (Nov. 2025) and cases cited therein.

[25] The Examining Attorney's non-final office action issued on June 30, 2024. The cancellation of Applicant's Prior Registration was ministerially recorded on May 3, 2024. *See* September 30, 2024 Response to Office Action at 9. However, as noted earlier, the sixth anniversary of

application on October 19, 2023, Applicant had already missed the October 17, 2023 deadline to file a Section 8 Declaration to maintain its Prior Registration, and subsequently failed to file a Section 8 Declaration by the April 17, 2024 grace period deadline. As a result, the current application did not overlap with the term of the Prior Registration. While the timing is unfortunate for Applicant, the maintenance of its Prior Registration was entirely within its control.

Third, Applicant argues that allowing its present application to register "would do nothing more than maintain the status quo"[26] and that:

> There has been no material change in facts during the pendency of the present application to warrant a finding that [Applicant's] mark is now unregistrable in view of those five third party marks that all coexisted in the register with [Applicant's] identical [P]rior [R]egistration that overlapped in time with the present application.[27]

Yet the cancellation of Applicant's Prior Registration is a material change. Applicant's Prior Registration was cancelled because Applicant failed to file an affidavit or declaration of current use of its mark in commerce. *See* 15 U.S.C. § 1058(a)-(b); *see also* TMEP § 1604 ("purpose of the affidavit or declaration of use . . . ('§ 8 affidavit or declaration') is to remove marks that are no longer being used in commerce from the register"). In general, "[a] cancelled or expired registration has no probative value other than to show that it once issued and is not entitled to any of

---

the registration was October 17, 2023, and the registration is deemed cancelled by operation of law as of October 18, 2023 because no Section 8 Declaration was filed by the end of the grace period.

[26] 4 TTABVUE 14.

[27] 10 TTABVUE 5.

the statutory presumptions of Trademark Act Section 7(b)." *Made in Nature, LLC v. Pharmavite LLC,* No. 91223352, 2022 TTAB LEXIS 251, at *31 (TTAB 2022).

While Applicant also emphasizes the six years co-existence of its Prior Registration with the Cited Registration, we find that the co-existence here holds less weight than that in *Strategic Partners*. Applicant's Prior Registration was registered based on its ownership of a foreign registration under Section 44(e) and as such Applicant did not have to demonstrate use in commerce to obtain its registration. *See* 15 U.S.C. § 1126(e); *In re Mother Tucker's Food Experience (Can.) Inc.*, 925 F.2d 1402, 1406 (Fed. Cir. 1991) ("Section 44(e) authorizes United States registration of foreign marks solely by virtue of a foreign registration, and does not require use in commerce for the initial registration."). However, once issued, registrations based on Section 44(e) must meet the use in commerce requirements of Section 8 to remain valid and subsisting. *See Imperial Tobacco, Ltd. v. Philip Morris, Inc.*, 899 F.2d 1575, 1582 (Fed. Cir. 1990) ("A section 44(e) registrant is merely granted a dispensation from actual use prior to registration, but after registration, there is no dispensation of use requirements."). We find it significant that when Applicant was required to file an affidavit or declaration of use to maintain its registration, it did not do so. As noted above, Applicant does not provide any explanation for why it failed to maintain its Prior Registration.[28] Additionally, there is no evidence in the record showing

---

[28] This stands in contrast to *In re Allegiance Staffing*, No. 85663950, 2015 TTAB LEXIS 180, at *6, 9 (TTAB 2015) where the applicant specifically explained that it "inadvertently allowed the prior registration to lapse, and attempted to correct that lapse by filing its new application within two weeks of its prior registration expiring." Moreover, in *Allegiance Staffing* both the prior registration and new application were based on use in commerce. *Id.* at 1, 6-7. That is not the case here.

Applicant has used the mark TOUCH MOBILE in commerce. The most reasonable conclusion from this timing, and the facts that the Prior Registration was based on Section 44(e) and the current application is also based on Sections 1(b) and 44(e), is that Applicant has never used its mark in commerce.

Fourth, Applicant essentially argues that the fact that it filed the subject application during the grace period to file the required Section 8 Declaration for its Prior Registration is sufficient to overcome the Section 2(d) refusal. But this ignores the fact that Applicant never filed the Section 8 Declaration and so the Prior Registration was cancelled for failure to provide proof of use in commerce. As such, Applicant lost the benefit of that registration, a necessary consequence of its nonuse. Allowing Applicant's current application based on its cancelled Prior Registration would give Applicant a benefit to which it is not entitled.

Considering this record, where Applicant's Prior Registration issued under Section 44(e) and was cancelled because no affidavit or declaration of use in commerce was filed, there is no indication in the record that Applicant has used the mark TOUCH MOBILE in commerce, and where the current application is also based on Sections 1(b) and 44(e), not use in commerce, we are unable to find that there was any meaningful co-existence of the formerly-registered mark with the mark shown in the Cited Registration.[29] Simply put, co-existence of marks on the trademark register

---

[29] This is consistent with other circumstances where we have held that registrations that issued under Section 44(e) lack probative value where use has not been established. *See Made in Nature*, 2022 TTAB LEXIS 228, at *30 (in determining conceptual strength of a mark "third-party registrations that are not based on use in commerce; but rather issued under Trademark Act Section[] 44(e) . . . based on the foreign trademark owners' home country

does not equate to co-existence in the marketplace, and the notion of "co-existence" of these marks specifically in the marketplace is illusory where the Prior Registration and current application are both based on Section 44(e), not use in commerce. *Cf. AMF Inc. v. American Leisure Prods., Inc.,* 474 F.2d 1403, 1406 (CCPA 1973) ("The existence of these registrations is not evidence of what happens in the market place."); *Ginc*, 2007 TTAB LEXIS 83, at \*26 ("the fact that these registrations coexisted on the register does not prove that the marks coexisted in the marketplace without confusion").

Finally, as the Federal Circuit instructs, "[t]he Board must decide each case on its own merits" and "the PTO's allowance of . . . prior registrations does not bind the Board or this court." *In re Nett Designs, Inc.*, 236 F.3d 1339, 1342 (Fed. Cir. 2001). Accordingly, we must determine the registrability of Applicant's mark based on the record in this case, and we are not bound by the determination of a different examining attorney who examined the application for Applicant's Prior Registration based on a different record. *MK Diamond Prods.*, 2020 TTAB LEXIS 263, at \*7-8 ("It is well settled that the USPTO is not bound by decisions of examining attorneys who examined applications for an applicant's previously registered marks based on different records.").

---

registrations . . . -- and have been registered for less than five years . . . lack probative value"); *Gen'l Mills, Inc. v. Fage Dairy Processing Indus. S.A.*, No. 91118482, 2011 TTAB LEXIS 280, at \*41 n.35 (TTAB 2011) (citation omitted) ("third-party registrations issued under Section 44(e) of the Trademark Act, without any use in commerce basis, have very little persuasive value" in showing relatedness of goods).

2.     Applicant Does Not Meet the Requirements for Res Judicata

Applicant also asserts that its "now-cancelled [Prior Registration] . . . for the identical mark TOUCH MOBILE, in connection with the identical goods and services, presents a *res judicata* issue that supports a new registration of [Applicant's] mark."[30] "Under the doctrine of res judicata . . . a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action." *In re Bose Corp.*, 476 F.3d 1331, 1335 (Fed. Cir. 2007) (citing *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326 (1979)).

An examining attorney's decision to approve an application is not a final judgment or prior adjudication. As the Board has explained:

> Prior adjudications include Board decisions or decisions by a reviewing court. The allowance of a trademark application by an [e]xamining [a]ttorney is not a final decision on the merits from a prior adjudication and is, therefore, not a basis for res judicata or collateral estoppel.

*In re Int'l Watchman, Inc.*, No. 87302907, 2021 TTAB LEXIS 446, at *34-35 (TTAB 2021) (affirming refusal of application and rejecting applicant's defense based on res judicata and collateral estoppel that a prior registration entitled its new application to registration) (citation omitted). *See also* TMEP § 1217 ("Prior adjudications include decisions of the Trademark Trial and Appeal Board or any of the reviewing courts.").

Similarly, the Federal Circuit, in a decision involving the corollary principle of issue preclusion, rejected an argument that an examining attorney's determination that a standard character version of the applied-for stylized mark was eligible for

---

[30] 4 TTABVUE 7-8, 14; 10 TTABVUE 7-9.

registration was binding as a matter of issue preclusion. *In re Cordua Rests., Inc.*, 823 F.3d 594, 601 n.2 (Fed. Cir. 2016). The Federal Circuit explained that the Supreme Court in *B&B Hardware, Inc. v. Hargis Indus.*, 575 U.S. 138, 158-59 (2015), "held that issue preclusion did apply to a TTAB decision in an inter partes opposition proceeding, noting that the procedures there resembled the procedures of a district court. . . . But there is no suggestion in *B&B Hardware* that an examiner's decision to register a mark or to refuse registration satisfies the traditional requirements of issue preclusion." *Id.*

Applicant acknowledges that it does not meet this precondition when it states that it "did not have an opportunity to obtain a 'final judgment' from the Board or by a reviewing court because the [P]rior [R]egistration was allowed and registered without a substantive refusal or need for appeal."[31] While Applicant asserts that "the Office's approval and issuance of the [P]rior [R]egistration, was in effect the closest to a 'final judgment on the merits of the claim' that [Applicant] could have received",[32] the prior allowance by a different examining attorney on a different record is not a final judgment on the merits and is not a basis for res judicata.

Bottom line, "there is no rule that a prior registration entitles [an applicant] to another registration." *In re Country Oven, Inc.*, No. 87354443, 2019 TTAB LEXIS 381, at *23 (TTAB 2019). We find both *Strategic Partners* and the doctrine of res judicata inapplicable here and as such the thirteenth *DuPont* factor is neutral.

---

[31] 10 TTABVUE 7.

[32] *Id.*

### B.     Strength or Weakness of the Registrant's Mark

We next address the *DuPont* factor that considers the strength or weakness of the cited mark MOBILE TOUCH because it affects the scope of protection we accord the mark. Applicant argues that "the marks of the cited registrations and [Applicant's] now-cancelled registration demonstrate that marks containing both 'MOBILE' and 'TOUCH' have been concurrently registered by three different entities for related goods and services, and are therefore weak"[33] and also exist in a "crowded field of marks using these terms individually or in combination."[34]

There are "two prongs of analysis for a mark's strength under the sixth [*DuPont*] factor: conceptual strength and commercial strength." *See, e.g., Spireon*, 71 F.4th at 1362. Because Applicant has not provided any evidence of third-party marketplace use of marks similar to the Cited Registration for similar goods and services, there is no evidence bearing on the commercial strength of the cited mark MOBILE TOUCH. *See New Era Cap Co. v. Pro Era, LLC*, No. 91216455, 2020 TTAB LEXIS 199, at *36 (TTAB 2020) ("Applicant did not provide evidence of any third-party use of marks

---

[33] 10 TTABVUE 6.

[34] 4 TTABVUE 8. Applicant makes a passing reference to "the relative sophistication of purchasers" in its appeal brief in discussing the alleged crowded field (*id*.), and a similar passing reference to "sophistication of the relevant consumers" in its reply brief. 10 TTABVUE 6. Sophistication of consumers is considered under the fourth *DuPont* factor, *DuPont*, 476 F.2d at 1361, but Applicant does not submit any arguments or evidence regarding that factor or otherwise directed to consumer sophistication apart from the passing references. Accordingly, we do not consider it. *See SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1320 (Fed. Cir. 2006) ("issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived") (citation omitted); *In re Embiid*, No. 88202890, 2021 TTAB LEXIS 168, at *11 n.26 (TTAB 2021) ("Because there is no argument or record evidence directed to these factors, we have not considered them in our analysis of the likelihood of confusion.").

consisting of or comprised of the term ERA for these goods, and thus no evidence of commercial weakness."). As such, we do not consider commercial strength.

As for conceptual strength, because the Cited Registration is "prima facie evidence of the validity of the registered mark," 15 U.S.C. § 1057(b), we must assume that the cited mark MOBILE TOUCH is inherently distinctive as evidenced by its registration on the Principal Register without a claim of acquired distinctiveness under Section 2(f) of the Trademark Act, 15 U.S.C. § 1052(f). *See Brooklyn Brewery Corp. v. Brooklyn Brew Shop, LLC*, 17 F.4th 129, 146 (Fed. Cir. 2021); *In re Davia*, No. 85497617, 2014 TTAB LEXIS 214, at *11-12 (TTAB 2014). However, the existence of third-party registrations for marks on similar goods or services can bear on a mark's conceptual strength. Specifically, third-party registered marks containing an element that is common to both the Registrant's and Applicant's marks can show that that element has a normally understood and well-recognized descriptive or suggestive meaning. *Spireon*, 71 F.4th at 1363 (citations omitted).

At the outset we find that Applicant's attempt to rely on its own cancelled Prior Registration to demonstrate weakness or a crowded field is unavailing. "The existence of a cancelled registration–particularly one cancelled for failure to provide a declaration of continued use [as Applicant's Prior Registration was here]–does not tend to show that the cited mark is weak . . . ." *In re Inn at St. John's, LLC*, No. 87075988, 2018 TTAB LEXIS 170, at *9 (TTAB 2018), *aff'd per curiam*, 777 F. App'x 516 (Fed. Cir. 2019). Additionally, "[b]y definition" Applicant's Prior Registration is not a third-party registration. *Made in Nature*, 2022 TTAB LEXIS 251, at *32.

As for the co-existence of the cited mark MOBILE TOUCH with the other four cited TOUCH TEL formative marks, which are owned by one entity, we agree with the Examining Attorney that "two sources are not enough to show dilution of a mark, nor [do] they show that there is a 'crowded field' of sources utilizing these similar terms."[35] *See Embiid*, 2021 TTAB LEXIS 168, at *52 ("three third-party registrations . . . is a far cry from the large quantum of evidence of third-party use and third-party registrations that was held to be significant in both *Jack Wolfskin* [*Ausrustung Fur Draussen GmbH & Co. KGAA v. New Millennium Sports, S.L.U.*, 797 F.3d 1363, 1371 (Fed. Cir. 2015)] and *Juice Generation[, Inc. v. GS Enters. LLC*, 794 F.3d 1334 (Fed. Cir. 2015)].") (citation omitted; cleaned up).

Considering the identifications of Applicant's goods and services, including mobile telephones and mobile telecommunications services, and the Cited Registration's services, which include text and numeric wireless digital messaging services, the word "MOBILE" is at a minimum descriptive as used in both marks. As such, "MOBILE" has been disclaimed in each mark, and thus can be considered a conceptually weak component. However, the record does not demonstrate that MOBILE TOUCH as a whole is conceptually weak. Accordingly, we find the cited mark is entitled to "the normal scope of protection to which inherently distinctive marks are entitled." *Bell's Brewery, Inc. v. Innovation Brewing*, No. 91215896, 2017 TTAB LEXIS 452, at *20 (TTAB 2017). As such, the sixth *DuPont* factor is neutral in the likelihood of confusion analysis.

---

[35] 9 TTABVUE 8.

### C. Similarity or Dissimilarity of the Marks

We evaluate "[t]he similarity or dissimilarity of the marks in their entireties as to appearance, sound, connotation and commercial impression." *In re Detroit Athletic Co.*, 903 F.3d 1297, 1303 (Fed. Cir. 2018) (*citing DuPont*, 476 F.2d at 1361). "Similarity in any one of these elements may be sufficient to find the marks confusingly similar." *Inn at St. John's,* 2018 TTAB LEXIS 170, at \*13 (citation omitted). "It is well-established that it is improper to dissect a mark, and that marks must be viewed in their entireties." *Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1368 (Fed. Cir. 2012); *Jack Wolfskin*, 797 F.3d at 1371 ("the touchstone of this factor is consideration of the marks in total").

Turning to a comparison of the marks, Applicant's mark TOUCH MOBILE is a mere transposition of the cited mark MOBILE TOUCH. Such transposition of the order of identical words in the marks demonstrates the overall similarity of the marks in appearance, sound, and commercial impression when considered in their entireties. *See Bakers Franchise Corp. v. Royal Crown Cola Co.*, 404 F.2d 985, 986 (CCPA 1969) (finding no fault with Board's analysis that "marks of the parties create substantially the same commercial impressions" where "applicant's compound mark includes the same words which make up opposer's mark, that is to say 'RITE DIET' is merely 'DIET-RITE' transposed"); *Made in Nature*, 2022 TTAB LEXIS 228, at \*46-48 ("Marks that include 'reverse combinations' of the same words or elements or a 'transposition' of the most important words comprising the marks have been found to be similar.").

We also agree with the Examining Attorney that "both marks convey the meaning of a 'touch' that is mobile."[36] Specifically, the Applicant's identified goods include various mobile radio and telephone devices that are operated by touch, and Applicant's and Registrant's identified services include transmission of texts and other information that allow users to stay in touch with others on the go. As such the marks have identical connotations and commercial impressions. *See In re Wine Soc'y of Am., Inc.*, No. 73662515, 1989 TTAB LEXIS 29, at *10 (TTAB 1989) (THE WINE SOCIETY OF AMERICA and AMERICAN WINE SOCIETY confusingly similar because "where the sole significant difference between marks applied to similar goods or services is the transposition of the words which compose those marks and where the transposition of words does not change the overall commercial impression, confusion has been found.").

Applicant does not submit arguments regarding this factor, and merely comments in a conclusory manner that confusion is not likely "due to differences in the marks themselves"[37] without identifying what the alleged differences are, and that Applicant's "TOUCH MOBILE mark does not incorporate the mark of either third party, nor vice versa," which ignores the identical words used in the cited mark MOBILE TOUCH.[38] Neither of these comments is persuasive, and neither provides a

---

[36] 9 TTABVUE 5.

[37] 4 TTABVUE 8.

[38] *Id.* at 14.

basis to disturb our finding of the similarity of the marks consisting of identical transposed terms that convey the same meaning.

Accordingly, we conclude that the marks are highly similar, such that this *DuPont* factor weighs heavily in favor of a likelihood of confusion.

### D. Similarity of the Goods and Services

We next analyze the similarity or dissimilarity and nature of the goods and services and "consider the applicant's goods [and services] as set forth in its application, and the [registrant's services] as set forth in its registration." *i.am.symbolic*, 866 F.3d at 1325 (citation and quotation omitted). "[W]here the goods [or services] in an application or registration are broadly described, they are deemed to encompass all the goods [or services] of the nature and type described therein." *In re Solid State Design Inc.*, No. 87269041, 2018 TTAB LEXIS 1, at *16 (TTAB 2018) (citation and quotation omitted). In our analysis, we consider each of the two classes in Applicant's application separately, "[b]ecause each class in Applicant's multi-class application[s] is, in effect, a separate application." *In re OSF Healthcare Sys.*, No. 88706809, 2023 TTAB LEXIS 353, at *9-10 (TTAB 2023) (citation omitted). *See also Federated Foods, Inc. v. Fort Howard Paper Co.*, 544 F.2d 1098, 1102 (CCPA 1976) ("analys[i]s must compare [applicant's] described goods in each . . . class to the goods of [the cited registration]"). "[I]t is sufficient for a finding of likelihood of confusion if relatedness is established for any item encompassed by the identification of goods [or services] within a particular class in the application." *In re Aquamar, Inc.*, No. 85861533, 2015 TTAB LEXIS 178, at *9 n.5 (TTAB 2015) (citing *Tuxedo Monopoly, Inc. v. Gen. Mills Fun Grp.*, 648 F.2d 1335, 1336 (CCPA 1981)).

The services identified in Class 38 of the involved application include:

> electronic transmission of . . . text, . . . and information by means of . . . cellular telephones, digital cellular telephones and mobile telephones; [and] . . . wireless data services for mobile devices via a wireless network for the purpose of sending and receiving . . . data, . . . information, text, numeric messaging and text messaging.

These services are broad enough to encompass the Cited Registration's more specific services of "text and numeric wireless digital messaging services; broadcast communication services, namely, transmitting text messages to designated recipients for others", and as such the services are legally identical, in part. *See In re Hughes Furniture Indus.*, No. 85627379, 2015 TTAB LEXIS 65, at *9-10 (TTAB 2016) (goods were legally identical where "[a]pplicant's broadly worded identification of 'furniture' necessarily encompasse[d] [r]egistrant's narrowly identified 'residential and commercial furniture'").

Applicant's identified goods in Class 9 include "apparatus and systems for recording, transmission, reception, processing, retrieval, reproduction, . . . display . . . of . . . images or data, namely, mobile radios, cellular telephones, digital cellular telephones, mobile telephones." These goods are used in the provision of the Cited Registration's services of "text and numeric wireless digital messaging services; broadcast communication services, namely, transmitting text messages to designated recipients for others." It is "well established that confusion may be likely to occur from the use of the same or similar marks for **goods**, on the one hand, and for **services** involving those goods, on the other." *Detroit Athletic*, 903 F.3d at 1307 (citations omitted; emphasis in bold here in italics in the original). Accordingly, we find based

on the identifications that Applicant's goods, including cellular telephones and mobile telephones, and the Cited Registration's text messaging services are closely related. *See Hewlett-Packard Co. v. Packard Press, Inc.*, 281 F.3d 1261, 1268 (Fed. Cir. 2002) ("goods and services of the parties related enough to make confusion likely" where applicant's applied-for services included "electronic transmission of data and documents via computer terminals" and opposer's registered goods covered "facsimile machines, computers, and computer software").[39]

Applicant's briefs do not address this factor and Applicant does not contest the similarity of the goods and services.

Given that the identifications on their face show that Applicant's Class 38 services are legally identical, at least in part, to the services covered by the Cited Registration, and that Applicant's Class 9 goods are closely related to those services, we find that the second *DuPont* factor weighs in favor of a likelihood of confusion.

### E. Trade Channels and Classes of Consumers

We next turn to the similarity or dissimilarity of the trade channels in which, and the classes of purchasers to whom, Applicant's and Registrant's respective goods and services are marketed. *DuPont*, 476 F.2d at 1361; *Stone Lion Cap. Partners, L.P. v. Lion Cap. LLP*, 746 F.3d 1317, 1322-23 (Fed. Cir. 2014). Just as with comparing the goods and services, we must base our analysis of trade channels and consumers on

---

[39] We base our determination for Classes 9 and 38 "on the face of the involved identifications" and "we thus need not discuss the Examining Attorney's Internet and registration evidence regarding relatedness." *OSF Healthcare Sys.*, 2023 TTAB LEXIS 353, at *18.

the identifications in the involved application and Cited Registration.[40] *Stone Lion*, 746 F.3d at 1323; *Detroit Athletic,* 903 F.3d at 1308 (factor "must be evaluated with an eye toward the channels specified in the application and registration").

Here, the application and Cited Registration do not contain any restrictions on the channels of trade or classes of customers. Given that the services identified in the application and the Cited Registration are in part legally identical, they are "presumed to travel in the same channels of trade to the same class of purchasers." *Viterra*, 671 F.3d at 1362 (citation omitted).

As for Applicant's goods in Class 9, given the lack of restrictions in the application and Cited Registration, Applicant's goods and the Cited Registration's services in Class 38 are "presumed to be sold in all normal trade channels to all the normal classes of purchasers." *Detroit Athletic*, 903 F.3d at 1308. As we found above, Applicant's goods, including cellular telephones and mobile telephones, are used in the provision of the Cited Registration's text messaging services. This demonstrates that the normal purchasers of and trade channels for Applicant's goods overlap with the normal purchasers of and trade channels for the Cited Registration's services. *See Corinthian Broad. Corp. v. Nippon Elec. Co.*, No. 91063918, 1983 TTAB LEXIS 145, at *11 (TTAB 1983) ("purchasers of opposer's [television broadcasting] services and purchasers of [the transmitters and receivers of still television pictures] goods encompassed by applicant's recitation of goods in its application would overlap and said purchasers would be likely to ascribe a common origin or sponsorship of the goods

---

[40] Applicant also does not address or contest this factor in its briefs.

and services"); *Genesco Inc. v. Martz*, No. 91121296, 2003 TTAB LEXIS 123, at \*28 (TTAB 2003) ("Given the in-part identical and in-part related nature of the parties' goods, and the lack of any restrictions in the identifications thereof as to trade channels and purchasers, these clothing items could be offered and sold to the same classes of purchasers through the same channels of trade.").

As such, the similarity of the trade channels and classes of customers also weighs in favor of a likelihood of confusion.

### F.     Conclusion on the *DuPont* Factors

After reviewing the evidence of record, and the arguments relating thereto, we conclude that confusion is likely. Applicant's and Registrant's marks are highly similar and this weighs heavily in our analysis. Applicant's services in Class 38 are legally identical in part to the Cited Registration's services, and the trade channels and classes of consumers are presumed identical. Applicant's goods in Class 9 are closely related to the Cited Registration's services, and the trade channels and classes of consumers are overlapping. All of these factors weigh in favor of a likelihood of confusion. The factors regarding the strength or weakness of the Cited Registration, and Applicant's cancelled Prior Registration, are neutral and do not alter our conclusion that confusion is likely.

## II.   Applicant's Identification of Goods and Services is Indefinite

The Examining Attorney found – and Applicant does not dispute – that the identifications in Classes 9 and 38 are indefinite and must be clarified. *See In re Tapio GmbH*, No. 87941532, 2020 TTAB LEXIS 483, at \*17 (TTAB 2020) ("An identification that fails to enumerate the goods and services with specificity is indefinite, either

because the nature of the goods or services is not clear, or because the wording is so broad that it may include goods or services in more than one class.").

The Examining Attorney proposed the following changes to the identifications (addition shown in bold and deletions shown in bracketed text) to further specify the nature, use, or purpose of certain goods and services:

- Class 9: Telecommunications and communications equipment, apparatus and systems for recording, transmission, reception, processing, retrieval, reproduction, manipulation, analysis, display and print out of sound, images or data, namely, mobile radios, cellular telephones, digital cellular telephones, mobile telephones, mobile data receivers and transmitters; encoded smart cards, namely, prepaid smart cards containing programming used for mobile telephones and Internet access, and prepaid telephone calling cards, magnetically encoded; accessories for cellular telephones and all other communications devices, namely, protective covers for mobile phones; microphones and speakers, **adapted** phone cradle[s] **holders**, and **adapted** telephone [holsters] **holders** and downloadable pre-recorded ringtones; **downloadable** interactive video game software

- Class 38: Telecommunication services, namely, providing **electronic transmission of** voice, data, pictures, music and video via wireless networks, electronic transmission of voice, text, images data and information by means of mobile radios, cellular telephones, digital cellular telephones and mobile telephones; mobile telephone communication services; **providing** wireless Internet access services; and wireless data **transmission** services **via telecommunications means** for mobile devices via a wireless network for the purpose of sending and receiving electronic mail, data, images, information, text, numeric messaging and text messaging and for accessing a global communications network.[41]

Again, Applicant does not submit any arguments or evidence to support that the identifications in Classes 9 and 38 are not indefinite. Rather, Applicant explains that it "declined to amend the identification of goods and services so that they would

---

[41] June 30, 2024 Office Action at 7-8; November 26, 2024 Final Office Action at 5-6.

remain identical to those of [its Prior] [R]egistration, and so that the principle of res judicata would remain fully applicable to support a finding of no likelihood of confusion."[42] Applicant also states that:

> [w]ithout acquiescing in the Examining Attorney's position on indefiniteness, with respect to the un-amended identifications in classes 9 and 38 . . . it is not opposed in principle to amending the identification of goods and services, and [i]n the event that the current refusal to register under Section 2(d) is withdrawn, . . . Applicant would favorably consider amending the identification of goods and services in the present application.[43]

We agree with the Examining Attorney that the identifications in Classes 9 and 38 are indefinite because the identifications fail to sufficiently specify the nature, use, and/or purpose of certain goods and services identified above,[44] and given that

---

[42] 4 TTABVUE 15.

[43] *Id.*

[44] In this case, affirming the requirement for a definite identification is sufficient, by itself, to refuse registration. However, the indefinite identification in Applicant's application did not affect our determination above that Applicant's identified goods and services are legally identical and/or closely related to the services in the Cited Registration.

Separately, we also agree with the Examining Attorney that the fact that an identification of goods or services was accepted in Applicant's earlier registration does not mean it is controlling or acceptable here. 9 TTABVUE 10. *See In re Omega SA*, 494 F.3d 1362, 1365 (Fed. Cir. 2007) (affirming examining attorney's requirement for a more definite identification of goods notwithstanding applicant's ownership of prior registrations using the term; "[US]PTO has discretion to determine whether and how a trademark registration should include a more particularized statement of the goods for which the mark is be used"); *In re Faucher Indus. Inc.*, No. 85202870, 2013 TTAB LEXIS 313, at *11 (TTAB 2013) ("examining attorney has discretion in determining the degree of particularity that is needed to clearly identify the goods"). *See also* TMEP § 1402.14 ("USPTO policy on acceptable identifications change periodically").

Applicant does not contest this refusal on any substantive basis, we affirm the refusal to register on this additional ground.[45]

**Decision:** We affirm the refusal to register Applicant's mark in Classes 9 and 38 under Section 2(d) based on a likelihood of confusion with the Cited Registration for the mark MOBILE TOUCH. We also affirm the refusal to register Applicant's mark based on the indefinite identifications of the goods in Class 9 and services in Class 38. The application will proceed only for the goods in Class 16 and the services in Classes 41 and 42, which were not subject to the refusals and are not before us on appeal.

---

[45] Even if we had reversed the Section 2(d) refusal, there would be no opportunity for Applicant to amend its identifications in compliance with the Examining Attorney's requirements. An application that has been considered and decided on appeal will not be reopened except for the entry of a disclaimer or upon order of the Director, situations not applicable here. Trademark Rule 2.142(g), 37 C.F.R. § 2.142(g); *In re Carlton Cellars*, No. 87438793, 2020 TTAB LEXIS 14, at *12 (TTAB 2020); TRADEMARK TRIAL AND APPEAL BOARD MANUAL OF PROCEDURE § 1218 (2025); TMEP § 1501.06.